*This opinion is subject to revision before final publication in the Pacific Reporter*
**2015 UT 91**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

IRVING PLACE ASSOCIATES,
*Petitioner*,

*v.*

628 PARK AVE, LLC,
*Respondent.*

No. 20130937
Filed November 13, 2015

On Certiorari to the Utah Court of Appeals

Third District, Summit County
The Honorable Keith Kelley
No. 100500068

Attorneys:

Bruce H. Shapiro, Andrew M. Wadsworth, Salt Lake,
for respondent

Ronald G. Russell, Rodger M. Burge, Salt Lake, for petitioner

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, and JUDGE BRADY joined.

Having recused herself, JUSTICE DURHAM does not participate herein; DISTRICT COURT JUDGE M. JAMES BRADY sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶ 1    By statute, a "judgment entered by a district court or a justice court" in Utah "becomes a lien upon real property if: (i) the judgment or an abstract of the judgment containing the information identifying the judgment debtor described in Subsection 78B-5-201(4) is recorded in the office of the county recorder; or (ii) the judgment or an abstract of the judgment and a separate information statement of the judgment creditor as described in Subsection 78B-5-201(5) is

recorded in the office of the county recorder." UTAH CODE § 78B-5-202(7)(a) (2008).[1] We are asked to interpret this provision in this case. In the proceedings in the district court, a default judgment was entered against James P. Ring and in favor of 628 Park Avenue LLC. Respondent 628 Park Avenue claims to have acquired a judgment lien by recording that judgment—a judgment that was nonfinal because claims against other defendants remained pending when it was entered.

¶ 2    We hold that 628 Park Avenue failed to acquire a judgment lien under the applicable statutory provisions. First, we conclude that only a *final* judgment qualifies as a "judgment" sustaining a lien under Utah Code section 78B-5-202(7). Second, and alternatively, we find that 628 Park Avenue's judgment failed to include "the information identifying the judgment debtor" required by section 78B-5-202(7)(a)(i).

I

¶ 3    In late September 2008, 628 Park Avenue filed a complaint asserting claims for unlawful detainer, breach of a promissory note, breach of lease, and declaratory relief against James Ring and other defendants. Ring failed to file an answer by mid-November and the court entered default. About three weeks later, in December 2008, the court entered a default judgment against Ring for $150,144. The claims against the remaining defendants remained pending. And the default judgment against Ring was not certified as final under Utah Rule of Civil Procedure 54(b).

¶ 4    Ring was the record owner of a condominium unit in Park City at the time the default judgment was entered. With that in mind, 628 Park Avenue recorded a copy of the default judgment in the Summit County Recorder's Office one week after the default judgment was entered. The recorded default judgment identified James P. Ring as the judgment debtor. But it contained no other identifying information.[2]

---

[1] These provisions have been amended recently. 2014 Utah Laws Ch. 151 (H.B. 315). But we cite the 2008 version of the code because that was the governing law at the time of the relevant events in this case.

[2] 628 Park Avenue also claims to have simultaneously submitted to the recorder's office a separate information statement containing the additional information called for in Utah Code section 78B-5-

(continued . . .)

¶ 5    Ring conveyed the Park City property to Irving Place Associates by warranty deed in March 2009. Irving Place claims that it was not aware of any alleged judgment lien by 628 Park Avenue at that time. It claims that it believed it was taking the property free of any liens or encumbrances.

¶ 6    In November 2009, 628 Park Avenue subsequently obtained an augmented judgment against Ring in the amount of $498,204. Thereafter, 628 Park Avenue recorded the augmented judgment—a recording that this time included the separate information statement containing the information called for in Utah Code section 78B-5-201(4)(b). 628 Park Avenue then obtained a writ of execution on the augmented judgment, directing the sale of all of Ring's nonexempt real property.

¶ 7    628 Park Avenue sought to apply the writ of execution to the Park City property that Ring had deeded to Irving Place—citing Ring's ownership of the property at the time the original default judgment was recorded. A day before a scheduled sheriff's sale, Irving Place filed a declaratory judgment action seeking to invalidate 628 Park Avenue's claimed judgment lien on the Park City property.

¶ 8    The district court initially entered a preliminary injunction blocking the sheriff's sale during the pendency of the declaratory judgment action. But it ultimately entered summary judgment against Irving Place and in favor of 628 Park Avenue, holding that 628 Park Avenue possessed a valid judgment lien against the property in the amount of the original default judgment.[3]

¶ 9    First, the district court noted that the operative statute speaks of liens on a "judgment"—not "final judgment"—and thus concluded that a nonfinal default judgment could qualify. Second, the district court determined that the informational requirements of the statute were satisfied by the identification of the judgment debtor in the judgment recorded with the recorder's office.

---

201(4)(b); The default judgment as recorded, however, did not include any such statement. So we proceed on the premise that only the judgment—and no separate information statement—was filed.

[3] The district court also granted summary judgment in favor of Irving Place in part, holding that the judgment lien did not include the augmented judgment amounts. That issue was not appealed and is therefore not before us.

¶ 10    A divided panel of the Utah Court of Appeals affirmed. *Irving Place Assocs. v. 628 Park Ave., LLC,* 2013 UT App 204, 309 P.3d 260. On the first issue the panel unanimously agreed that the "judgment[s]" covered by the statute encompassed nonfinal judgments. *Id.* ¶¶ 9–12. On the second issue, the panel was divided. The majority agreed with the district court—concluding that the statute could be satisfied by the submission of a judgment identifying the debtor by name. *Id.* ¶¶ 13–17. The dissent interpreted the statute differently. It concluded that the mere identification of a judgment debtor on the face of a judgment was insufficient, and would have interpreted the statute to require the judgment (or abstract) to include "the same specific information" required in the separate information statement under Utah Code section 78B-5-201(4)(b). *Id.* ¶¶ 19–27.

¶ 11    Irving Place filed a petition for certiorari, which we granted. The petition presents legal questions of statutory interpretation. We consider such issues de novo, affording no deference to the district court's legal conclusions. *See, e.g., Manzanares v. Byington (In re Adoption of Baby B.)*, 2012 UT 35, ¶ 41, 308 P.3d 382.

II

¶ 12    As a general rule "a judgment entered in a district court" may sustain a "lien upon" real property in Utah. UTAH CODE § 78B-5-201(3)(a) (2008). The code prescribes two alternative means of establishing such a lien: "(i) the judgment or an abstract of the judgment containing the information identifying the judgment debtor as described in Subsection 78B-5-201(4) is recorded in the office of the county recorder; or (ii) the judgment or an abstract of the judgment and a separate information statement of the judgment creditor as described in Subsection 78B-5-201(5) is recorded in the office of the county recorder." *Id.* § 78B-5-202(7)(a); *see also* § 78B-5-201(4)(a)–(b) (requiring either the recording of a judgment or abstract of judgment including "the information identifying the judgment debtor" or a copy of a "separate information statement," and specifying the terms of the separate statement).

¶ 13    Irving Place challenges the judgment lien at issue in this case on two statutory grounds. First, it asserts that the "judgment" sustaining a lien under the above provisions must be a final judgment. Second, it contends that the recorded judgment in this case was insufficient because it merely identified the judgment debtor by name and did not provide sufficient "information" as required by our law. We agree on both counts and reverse.

A

¶ 14    On the question of whether a nonfinal default judgment qualifies as a "judgment" subject to a statutory lien, the court of appeals found the governing statutory language "plain." *Irving Place Assocs. v. 628 Park Ave., LLC*, 2013 UT App 204, ¶ 9, 309 P.3d 260. It based that determination on the fact that the operative provisions "utilize the term 'judgment' multiple times, but neither contains the term 'final judgment.'" *Id.* ¶ 10. Quoting the district court, the court of appeals reasoned that the legislature "could have . . . used the term 'final judgment'" if it had "intended that a judgment be final in order for a judgment lien to be created." *Id.* Lastly, the court of appeals noted that "the legislature has used the specific term 'final judgment' in lieu of the more general term 'judgment' elsewhere in Title 78B of the Utah Code." *Id.* ¶ 11 (citing UTAH CODE § 78B-11-129(1)(f) ("An appeal may be taken from . . . a final judgment entered pursuant to this chapter."); UTAH CODE § 78B-5-828(1)(c) ("'Ultimately prevail on the merits' means, in the final judgment, the court rules in the plaintiff's favor on at least one cause of action.").

¶ 15    Unlike the court of appeals, we do not find the governing statutory language "plain." On the question presented here, there is threshold ambiguity in the word "judgment." This legal term of art can convey two different meanings. When the law speaks of a "judgment," it sometimes has reference only to a disposition of the claims and defenses of individual parties—even a nonfinal disposition that leaves other claims, including claims involving other parties, to be resolved in further litigation.[4] Yet that is by no means the only notion of "judgment." Sometimes "judgment" is used to refer to a final, appealable order—a decision that disposes of all

---

[4] *See, e.g., Powell v. Cannon*, 2008 UT 19, ¶ 12, 179 P.3d 799 (noting that generally parties cannot appeal from a "nonfinal judgment" in order to "preserve[] scarce judicial resources"); *ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 15, 998 P.2d 254, 258 (holding that "a trial court must determine the amount of attorney fees awardable to a party before the judgment becomes final for the purposes of an appeal"); THE WOLTERS KLUWER BOUVIER LAW DICTIONARY 577 (Compact ed. 2011) ("A judgment is the order ruling to grant or deny relief in any matter pending before a court. A judgment may be partial or complete, preliminary or final, summary or following a trial.").

claims asserted by all parties, in a manner triggering an appeal of right.[5]

¶ 16    We cannot resolve this ambiguity by noting that the statutory reference is only to the ambiguous term "judgment," not the unambiguous phrase "final judgment." The latter formulation certainly would have eliminated any ambiguity. And it is true that the legislature "could have" used this unambiguous phrase. *Irving Place*, 2013 UT App 204, ¶ 10. But the legislature's failure to speak more clearly tells us little or nothing about its intent in using terms that are less clear. "In any matter of statutory construction of any consequence, it will almost always be true that the legislature could have more clearly repudiated one party's preferred construction. But the converse is almost always true as well . . . ." *Hill v. Nakai (In re Estate of Hannifin)*, 2013 UT 46, ¶ 25, 311 P.3d 1016.   Just as the legislature could have clearly called for liens only as to "final judgments," it also could have spoken more clearly the other way—endorsing, for example, liens for "all judgments, whether interlocutory or final." Thus, "[t]he legislature's failure to speak more clearly" yields no basis for interpreting the ambiguous terms it voted into law. *Id.* ¶ 26. *See also LeBeau v. State*, 2014 UT 39, ¶ 88, 337 P.3d 254 (Lee, J., dissenting) ("[T]he legislature's capacity to speak more clearly—here as almost always—tells us absolutely nothing. . . . [T]he failure to speak more clearly gets us nowhere in the face of an ambiguity like this one.").

¶ 17    The fact that the code speaks elsewhere of "final judgment[s]" is unhelpful for the same reason. *See Irving Place*, 2013 UT App 204, ¶ 11 (citing UTAH CODE § 78B-11-129(1)(f)). Where that full phrase appears, no doubt remains as to the sort of judgment that is implicated (a *final* one). But the appearance of clear terminology elsewhere in the code tells us nothing of consequence regarding the meaning of other, less clear terms presented for our review.

---

[5] *See, e.g., Code v. Utah Dep't of Health,* 2007 UT 43, ¶ 4, 162 P.3d 1097 (observing that the Utah Rules of Appellate Procedure refer to a "final judgment" when stating "notice of appeal . . . shall be filed . . . within 30 days after the date of entry of the judgment"); BLACK'S LAW DICTIONARY 970 (10th ed. 2014) (defining "judgment" as the "final determination of the rights and obligations of the parties in a case," and "any order from which an appeal lies").

¶ 18    For these reasons, the question before us is not one that can be resolved by facile resort to "plain language." The language we interpret quite simply is not plain. It is ambiguous.

¶ 19    Upon acknowledging ambiguity, a first resort for a court is the legal and linguistic context of the terms under review. That context, after all, will often eliminate one of two possible meanings as implausible. *See, e.g., Grazer v. Jones*, 2012 UT 58, ¶ 23, 289 P.3d 437 (rejecting a proposed interpretation of a rule because "an understanding of the legal and practical context surrounding it" foreclosed that construction); *Deal v. United States*, 508 U.S. 129, 131–32 (1993) ("[S]usceptibility of all of these meanings does not render [a] word . . . ambiguous; all but one of the meanings is ordinarily eliminated by context."). And in that event we adopt the sense of the statutory language that is not eliminated by reference to context. That is our basis for resolving this case. In light of the legal and linguistic context of the judgment lien provisions at issue, we interpret the term "judgment" to have reference to the *final* sense of the term.

¶ 20    First, a closely proximate subsection of one of the lien provisions at issue states that "[j]udgments shall continue for eight years from the date of entry in a court unless previously satisfied or unless enforcement of the judgment is stayed in accordance with law." UTAH CODE § 78B-5-202(1) (2008). In context, the eight-year period is an obvious reference to the eight-year limitations period for an action upon a "judgment" set forth in Utah Code section 78B-2-311. And with that in mind, the "judgments" covered by the lien statutes must be final judgments. That is clear from the fact that the limitations clock begins to run only upon entry of a final judgment.[6]

---

[6] *See, e.g., Code*, 2007 UT 43, ¶ 4 (observing that the until there is a final judgment, the thirty-day time period within which an appeal must be filed does not begin); *see also Hall v. Cole*, 76 S.W. 1076, 1077 (Ark. 1903) ("Until there is a final judgment . . . no cause of action accrues to the creditors, and the statute of limitations does not begin to run."); *James v. James*, 225 P. 208, 210 (Colo. 1924) ("Ordinarily where a statute of limitations is stayed during the pendency of legal proceedings or litigation, the statute begins to run from the date of the final judgment in such proceedings."); *Harper v. Cal-Maine Foods, Inc.*, 43 So. 3d 401, 403 (Miss. 2010) ("Absent some argument for tolling, the statute of limitations for a bad-faith claim against an employer or insurance company for failure to pay benefits begins to

(continued . . .)

Because only a final judgment starts the limitations clock, it cannot be said that a *nonfinal* "[j]udgment[] shall continue for eight years from the date of entry." *Id.* § 78B-5-202(1) (2008). A nonfinal judgment, in fact, would continue for longer—for eight years *after* the eventual entry of a final judgment. This tells us that the "judgments" covered by section 202(1) must be the final variety. And the canon of consistent meaning tells us that the "judgment[s]"

---

run when the Commission renders final judgment"); *George v. Hartford Accident & Indem. Co.,* 412 S.E.2d 43, 43 (N.C. 1992) (holding that "the statute of limitations begins to run when final judgment is entered in favor of the lien claimant"); *Shannon v. Shannon*, 1238 P.2d 744, 746 (Or. 1951) (observing that in the context of installments paid after a divorce, "the statute of limitations begins to run as to each installment from the due date thereof" because each "constitutes a separate and final judgment"); *Am. Star Energy & Minerals Corp. v. Stowers*, 457 S.W.3d 427, 428 (Tex. 2015) (holding that a judgment creditor's cause of action accrued and the statute of limitations began to run after final judgment was entered); *Dep't of Taxes v. Murphy*, 883 A.2d 779, 781 (Vt. 2005) (finding the statute of limitations began to run upon the date of the final judgment in a tax case). The "judgment" triggering the eight-year limitations period must be a final one, as a nonfinal judgment is subject to modification by the district court unless and until it becomes final. *See, e.g., State v. Garner*, 2005 UT 6, ¶ 12, 106 P.3d 729 (holding that a modification to a criminal judgment did not restart the thirty-day period for filing notice since the alteration "was not a material change to the judgment" and therefore did not "constitut[e] a new final judgment for purposes of appeal"); *DFI Props. LLC v. GR 2 Enters. LLC,* 2010 UT 61, ¶ 18, 242 P.3d 781 (noting that "rule 54 of the Utah Rules of Civil Procedure permits trial courts to modify their decisions at any time prior to final judgment"); *Johnson v. Johnson,* 2014 UT 21, ¶ 18, 330 P.3d 704 (agreeing with the lower court that because "[i]nstallments under a decree of divorce for alimony or support of minor children become final judgments as soon as they are due," they "cannot thereafter be modified" (alterations in original)). And a case may remain pending for years between the initial entry of a nonfinal judgment and the ultimate entry of a final one. For that reason the limitations period cannot begin running on a judgment that is interlocutory in nature.

subject to a lien under a neighboring subsection—section 202(7)—are also the final kind.[7]

¶ 21    The canon of consistent meaning is at its strongest when it is applied to a term used in neighboring subparts of the same statutory provision.[8] Quite properly. The same term may be used in different ways in different provisions of the code. But it would be quite unusual for the legislature to use a term in one sense in one subsection of a statute and then to turn around and use the same term in a very different sense in a neighboring subsection of the same statute. Thus, because the "judgments" spoken of in section 202(1) are final judgments, we consider the "judgment" lien under section 202(7) to be of the same variety.

¶ 22    This conclusion is confirmed by another proviso in section 202(1)—in the exception to the eight-year period where "enforcement of the judgment is stayed in accordance with the law." *Id.* § 78B-5-202(1). In Utah a judgment cannot be enforced until it is final. *See* UTAH R. CIV. P. 64E. So again the statutory notion of judgment in section 202 is a *final* one.

¶ 23    Finally, this construction of "judgment" is also reinforced by section 202(5)(a). That provision sets forth terms and conditions for a lien to be "terminated" when "any judgment is appealed." UTAH CODE § 78B-5-202(5) (providing for termination "upon deposit" of sufficient security with the court). By statute, of course, only a *final*

---

[7] *Barneck v. Utah Dep't of Transp.*, 2015 UT 50, ¶ 31, 353 P.3d 140 (refusing to give a word different meanings "since under the canon of consistent usage [the word] cannot properly mean one thing as applied to two of the objects in a series . . . but something else as applied to the other object in the same series" (footnote omitted)); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (relying in part on "the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning" to sustain the conclusion that a term in one subsection of a statute had the same meaning as it did in the preceding subsection).

[8] *See Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) (applying the canon and refusing to give a term "two different meanings in the same section of the statute"); *Barneck*, 2015 UT 50, ¶ 31 (applying the canon and refusing to give a term different meanings as applied to terms in the same sentence).

judgment is subject to an appeal of right. *See* UTAH R. APP. P. 3(a) (2012). So this provision again reinforces the conclusion that the sort of "judgment" spoken of in section 202 is the final (appealable) kind.[9]

B

¶ 24   The second question presented is whether the judgment recorded by 628 Park Avenue provided the "information" required by Utah Code sections 78B-5-201(4) and 78B-5-202(7). Under these provisions, a judgment creditor may satisfy the informational requirement of the statute in either of two ways — (1) by recording a judgment or an abstract of the judgment "containing the information identifying the judgment debtor as described in Subsection 78B-5-201(4)"; or (2) by recording (in addition to the judgment or an abstract thereof) "a separate information statement of the judgment creditor as described in Subsection 78B-5-201(5)." UTAH CODE § 78B-5-202(7)(a)(i)–(ii) (2008).

¶ 25   As the court of appeals indicated, "the statute's use of the word 'or' clearly indicates that an information statement identifying the information listed in [section 201(4)] is not necessary where the judgment or abstract of judgment contains 'the information identifying the judgment debtor.'"[10] *Irving Place*, 2013 UT App 204, ¶ 16 (quoting UTAH CODE § 78B-5-201(4)(a)). "The question, then, is what minimum identifying information must be included [in] the judgment in order for it to satisfy" the statute. *Id.*

¶ 26   The court of appeals majority concluded that the provision of the judgment debtor's name was sufficient "information identifying the judgment debtor." UTAH CODE § 78B-5-202(7)(a)(i) (2008). It based that decision on the fact that "[e]ven the information" required

---

[9] We recognize, of course, the existence of exceptions to the final judgment rule. But the judgment at issue here was subject to no such exception, and the unqualified reference in section 202(5) to "any judgment [that] is appealed" suggests that the legislature was using the term to refer to an appealable order.

[10] The information listed in section 201(4) includes the name, "last-known" address, social security number, birth date, and driver's license number of judgment debtors; the name and address of judgment creditors; the amount of the judgment; and information regarding the existence and expiration dates of stays of enforcement. § 78B-5-201(4)(b).

to be included in the "separate information statement" is "not strictly required," in that the statute requires the provision of the "'debtor's Social Security number, date of birth, and driver's license number'" only "'if known,'" and allows a party to avoid providing other information by certifying that it "'is unknown or unavailable.'" *Irving Place*, 2013 UT App 204, ¶ 17 (quoting UTAH CODE § 78B-5-201(4)(b)(iv)). "Given that the information outlined in subsection 4(b) [to be included in the separate information statement] is not strictly required," the court of appeals majority held that "the information on the judgment identifying Ring by name was sufficient to create a valid lien." *Id.*

¶ 27    We disagree and reverse. The fact that the statute allows a party to omit unknown items from the separate information sheet doesn't get us very far. At most that suggests that those same items could also be omitted from the recorded judgment or abstract. That still leaves the question of the required (known) content of "the information identifying the judgment debtor." UTAH CODE § 78B-5-201(4)(a).

¶ 28    We interpret the statute to require more than just the judgment debtor's name. The operative statutory phrase—"the information identifying the judgment debtor"—appears in two different places in the statute: first in section 201(4)(a), and next in section 202(7)(a)(i). The latter use of this phrase is telling. It requires that the judgment or abstract include "*the* information identifying the judgment debtor *as described in Subsection 78B-5-201(4)*." *Id.* § 78B-5-202(7)(a)(i) (emphasis added). In context, this is an apparent reference to the identifying information specified in subsection 201(4)(b). This conclusion follows from two points. First is the statute's use of a definite article. What is required is not just some undefined "information." It is "*the information*" that must be provided. That implies the existence of specific information that is objectively identifiable in the statute.

¶ 29    Second, the statute tells us where to look for such information—in "Subsection 78B-5-201(4)." *Id.* In context, this must be a reference to subsection 201(4)(b). There is, after all, no specific information specified in subsection 201(4)(a), so 201(4)(b) is the only

IRVING PLACE *v.* 628 PARK AVE.

Opinion of the Court

place one could go to find "the information" that is required to be included.[11]

¶ 30    With this in mind, we disagree with the court of appeals majority's conclusion that the judgment debtor's name counts as "the information identifying the judgment debtor" under Utah Code sections 201(4)(a) and 202(7)(a)(i). The required information is more than that. In context, "the information" that must be included is the information "identifying the judgment debtor as described in" subsection 201(4)(b).

¶ 31    This still leaves the question of how much of the information delineated in section 201(4)(b) is to be included in the recorded judgment or abstract. At the outset, it is worth reiterating what we noted above: By statute, information that is unknown or unavailable need not be included. *See supra* ¶ 26; UTAH CODE § 78B-5-201(4)(iv) (requiring social security number, date of birth, and driver's license number "if known"); *id.* § 78B-5-201(5)(b) (allowing judgment creditor to omit other information by stating that it is "unknown or unavailable"). We also note that what is required is only "the information *identifying the judgment debtor*." *Id.* § 78B-5-201(4)(a) (emphasis added); *id.* § 78B-5-202(7)(a)(i). Thus, the identifying information in the judgment or abstract under sections 201(4)(a) and 202(7)(a)(i) is not simply a restatement of the identifying information delineated in section 201(4)(b); it is a subset thereof, consisting of only that information identifying the judgment debtor.

¶ 32    That information consists of the following: "the correct name and last-known address of each judgment debtor and the address at which each judgment debtor received service of process," *Id.* § 78B-5-201(4)(b)(i), and "the judgment debtor's social security number,[12]

---

[11] The current version of the code states this clearly.  It provides for the recording of a judgment or abstract "containing the information identifying the judgment debtor as described in Subsection 78B-5-201(4)(b)." UTAH CODE § 78B-5-202(7)(a)(i) (2014) (emphasis added). This amended provision does not apply in this case; but we cite it to note that the approach we outline here is consistent with the current version of the code.

[12] As we noted during oral argument in this case, the requirement of providing the judgment debtor's social security number on a public document raises significant personal privacy concerns. It also runs afoul of our Utah Rules of Judicial Administration. *See* UTAH R. JUD. ADMIN. 4-202.09(9)(A) (prohibiting the inclusion of non-public

(continued . . .)

date of birth, and driver's license number if a natural person," *id.* 78B-5-201(4)(b)(iv). The other details set forth in subsection 201(4)(b) have nothing to do with "identifying the judgment debtor," and accordingly are not requisite elements of "the information" to be included in a recorded judgment or abstract.[13]

¶ 33    We reverse on this alternative basis as well. 628 Park Avenue's recorded judgment included only the name of the judgment debtor. It accordingly failed to provide "the information identifying the judgment debtor" under section 201(4)(b).

---

information in a public record); *id.* 4-202.02(2)(M), (4)(I) (classifying social security and driver's license numbers as private information, while treating the last four digits of such numbers as public). These tensions seem ripe for challenge—either in future litigation, or, if not, through legislative amendment. But they are not squarely presented here, so we decline to resolve them conclusively.

[13] For this reason our decision to reverse the majority of the court of appeals is not an endorsement of the position of the dissent. We do not read section 201(4)(a) to require the provision of "the same specific information identified in section 78B-5-201(4)(b)," *Irving Place*, 2013 UT App 204, ¶27 (Thorne, J., dissenting), but only the information in section 201(4)(b) that identifies the debtor.